RECEIVED
IN LAKE CHARLES, LA.

SEP 18 2012

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

NILTON GOODWIN : DOCKET NO. 2:11-CV-0399-PM-KK

VS. : JUDGE MINALDI

STERICYCLE, INC. : MAGISTRATE JUDGE KAY

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [Doc. 38], filed by the defendant, Stericycle, Inc. ("Stericycle"). The motion is opposed by the plaintiff, Nilton Goodwin [Doc. 40]. Mr. Goodwin submitted a deficient opposition memorandum which did not contain a statement of uncontested facts, and was granted additional time by the court on two occasions to cure the deficiencies [Docs. 41, 49], which he did not cure within a timely manner. Stericycle then filed a Reply to the plaintiff's objections to its motion [Doc. 50]. For the reasons stated herein, Stericycle's motion will be GRANTED.

## FACTS

In this lawsuit, Mr. Goodwin claims that his employer, Stericycle, unlawfully discriminated and retaliated against him for protesting about a racially hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and Title I of the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981 ("Section 1981").[1]

---

[1] Pl.'s Compl., pg. 1.

Stericycle is a medical waste disposal company.[2] It operates a facility in Jennings, Louisiana, where it employs drivers, warehouse employees, and others who assist in medical waste disposal.[3] In 2004, Stericycle hired Mr. Goodwin (who is African American), as a long haul/swing driver, and later made him a route manager.[4] At the outset of Mr. Goodwin's employment, he received a copy of Stericycle's Code of Business Conduct and Team Member Handbook, and acknowledged that he had read and understood the policies.[5]

The Code of Business Conduct and Team Member Handbook included Stericycle's policies that prohibit against discrimination on the basis of race.[6] Additionally, they both included Stericycle's policy against harassment, which included language prohibiting ". . . conduct in the workplace that creates, encourages or permits an offensive, intimidating, or inappropriate work environment."[7] Both sets of materials also contained a Personal Conduct Policy that required employees to exercise good judgment and to avoid "behavior which is harmful to Stericycle's reputation," violation of which could lead to corrective action, up to and including termination.[8]

As a route manager for Stericycle, Mr. Goodwin was required to pick up medical waste from several different medical facilities, and he interacted with customers at these facilities while

---

[2] Def.'s Statement of Uncontested Material Facts, [Doc 38-2], ¶ 1.

[3] *Id.*

[4] *Id.* at ¶ 9.

[5] *Id.* at ¶¶ 14, 16.

[6] *Id.* at ¶¶ 3, 5-6.

[7] *Id.* at ¶¶ 3, 6.

[8] *Id.* at ¶¶ 4,7

on the job.[9] Stericycle maintains and Mr. Goodwin acknowledges, in his deposition, that he had been "written up" on a few occasions after customers lodged complaints about his behavior.[10] The first incident occurred on June 29, 2005, when Mr. Goodwin had an argument with a Caucasian operating room tech at Opelousas General Hospital. The operating tech told Mr. Goodwin that he could not come into a sterilized room to pick up a medical waste container because he was not wearing the proper sterilized room garments.[11] Mr. Goodwin then conjectured to another Opelousas General employee about the operating tech, asking "if this guy was some kind of racist."[12] After the Director of Opelousas Hospital's Environmental Safety and Health reported this incident to Mr. Goodwin's superiors, Archie Smith and Bob Jackson (both Causasian), he was disciplined.[13] Mr. Goodwin acknowledged in his deposition that this incident happened,[14] but did not address it further in his Response to Stericycle's Motion for Summary Judgment.[15]

In 2009, Mr. Goodwin received another customer complaint from West Calcasieu-Cameron Hospital, after he went to the front desk of the hospital (instead of reporting to the hospital's Vice President of Support Services or Environmental Safety and Health Director) and improperly complained to the receptionist that the hospital's medical waste was not properly

---

[9] *Id.* at ¶ 11.

[10] *Id.* at ¶¶ 17-37.

[11] *Id.* at ¶ 18.

[12] *Id.* at ¶ 20.

[13] *Id.* at ¶ 21.

[14] Pl.'s Dep., pg. 103: 21-24.

[15] *See generally* Pl.'s Mem. in Objection to Def.'s Mot. for Summ. J., [Doc. 40].

packaged and that the hospital could be fined for it.[16] Once again, Mr. Goodwin acknowledged in his deposition that this incident happened,[17] but did not address it further in his Response to Stericycle's Motion for Summary Judgment.[18]

The third and final customer complaint, which resulted in Mr. Goodwin's termination and is the event which forms the basis for Mr. Goodwin's Title VII and Section 1981 claims, occurred on March 4, 2010, when he was working at Jennings American Legion Hospital.[19] While at Jennings, he approached Admissions Clerk Joan Miller, Security Officer "Dot" LeBlanc, and Unit Secretary Joni Ardoin (all Caucasian) at the hospital security desk.[20] Upon approaching them, Miller asked him where his partner, Matthew Doise (Caucasian) was, referring to Mr. Goodwin and his partner as "Frick and Frack."[21] Mr. Goodwin responded by calling the three women "The Three Stooges."[22] When Ms. Ardoin asked which one she was, Mr. Goodwin told her "Curly, the fat one."[23] In his deposition, Mr. Goodwin acknowledged that his comment saddened Ms. Ardoin and that she responded by walking away without saying anything, but he claims that he meant no offense by the comment.[24] He then tried to hug and kiss

---

[16][Doc. 38-2], at ¶¶ 22-23.

[17]Pl.'s Dep., pg. 114:17-115:5.

[18]*See generally* [Doc. 40].

[19][Doc. 38-2], at ¶ 24.

[20]*Id.* at ¶ 24.

[21]*Id.* at ¶ 26.

[22]*Id.* at ¶ 28.

[23]*Id.* at ¶ 29.

[24]Pl.'s Dep., pg. 11.

4

Ms. Ardoin in an effort to apologize to her.[25] Mr. Goodwin was not immediately disciplined, and in fact the hospital did not, in its later factual report on the incident, classify Mr. Goodiwn's behavior as harassment or suggest that action be taken against him by Stericycle.[26]

After the incident, Mr. Goodwin went on vacation, and while on vacation, his supervisor, Mr. Smith, took over his route.[27] While Mr. Smith was at Jennings, Ms. LeBlanc complained to him that Mr. Goodwin had called Ms. Ardoin "Curly, the fat one" a few days prior.[28] In response, Mr. Smith talked to the hospital Services Director, Hilton LaSage (Caucasian), which prompted Mr. LaSage to ask all three women to write up statements about the March 4th incident.[29] Ms. LeBlanc and Ms. Miller provided statements to Mr. LaSage, but Ms. Ardoin did not, instead giving a written statement to Mr. Goodwin claiming that she had not been offended by Mr. Goodwin's comment.[30] Mr. Smith then discussed the incident with Stericycle supervisor Mr. Jackson and Stericycle HR manager Christine Sura (Caucasian), and came to the conclusion that Mr. Goodwin's comment to Ms. Ardoin was grounds for termination.[31] Mr. Goodwin was subsequently terminated on March 15, 2010.[32]

Mr. Goodwin's arguments in his Response Memorandum mostly focus on this incident.

---

[25][Doc. 38-2] at ¶¶ 31,33.

[26]Ex. for Pl.'s Mem. in Objection to Def.'s Mot. for Summ. J., [Doc. 40-1], pg. 1.

[27][Doc. 38-2] at ¶ 30.

[28]*Id.* at ¶ 31.

[29]*Id.* at ¶ 32.

[30]*Id.* at ¶¶ 33-34.

[31]*Id.* at ¶ 35.

[32]*Id.* at ¶ 36.

As a foundation, he alleges that he was certainly qualified for his position based on his years of experience, and was not, in fact, dismissed due to poor work performance.[33] He claims that Ms. Ardoin was "portrayed as a victim by Stericycle," when in fact she was not ultimately offended by his statement, backing this up with a letter he received from Jennings[34] and a written statement from Ms. Ardoin.[35] He alleges that Ms. LeBlanc, in reporting him for calling Ms. Ardoin "Curly, the fat one," did not follow proper protocol in complaining about his behavior.[36] Further, he argues that when he was called in by his supervisors, Mr. Smith, and Mr. Jackson, he was shown a form stating his reason for termination as "sexual harassment," while later, at his deposition, he was shown an entirely different form which instead described his behavior as "misconduct."[37] Finally, Mr. Goodwin alleges that in a unemployment compensation benefits proceeding after his termination, Ms. Ardoin spoke on his behalf, and the Administrative Law Judge found that he was entitled to unemployment benefits, as his discharge was not the result of misconduct on his

---

[33] Pl.'s Mem. in Objection to Def.'s Mot. For Summ. J., [Doc. 40] at X; *see also* Pl.'s Ex. "Resume," [Doc. 40-1], pg. 5-8.

[34] *Id.* at ¶ VII; Pl.'s Ex., [Doc. 40-1], pg. 1. The letter states, in relevant part: "Your employer asked for and received a factual report of the occurrence from the hospital. The report did not characterize the incident as harassment. The hospital did not recommend or request that any action be taken against you by your employer."

[35] Ex.1 to Def.'s Mot. for Summ. J., [Doc. 38-4], pg. 42-43. Ms. Ardoin states, in her letter: "[Mr. Goodwin] came up [to myself and Ms. LeBlanc and Ms. Miller] and was joking, saying we were the three stooges. When I asked him which one I was, he said the fat one. He was joking and he apoliogized to me but it made me sad. So I turned around and left without saying anything." Ms. Ardoin notes that she did not stay offended, however, and would not write up a statement on the incident: ". . . I would not sign or write anything because it was no big deal. [Mr. Goodwin] has never sexually harassed anyone!! He has always been nice to me and always just joking around. . . .This was not worth [Mr. Goodwin] getting in trouble for."

[36] [Doc. 40] at ¶ VIII.

[37] *Id.* at VI, referencing Pl.'s Dep. Ex. 7 ("Termination Form"), [Doc. 38-5], pg. 82.

6

part.[38] From all this (Ms. Ardoin speaking on his behalf at his benefits hearing, the conclusions of the Administrative Law Judge, the inconsistencies between the discharge forms he was shown, and Jennings not recommending that any action be taken against him), Mr. Goodwin makes the inference that the real motivation behind his discharge must have been racial discrimination.[39]

Stericycle responds by arguing that he was not in fact qualified for his job, as he insulted a customer, in direct violation of Stericycle's Personal Conduct Policy and anti-harassment policy.[40] It argues that it is irrelevant whether the form Mr. Goodwin was shown at his deposition was completely consistent with the one shown to him upon termination, because this inconsistency does not change the fact that he admitted in his deposition that calling a customer "Curly, the fat one" could be grounds for termination[41] Finally, it argues that the findings of the Administrative Law Judge in Mr. Goodwin's unemployment benefits hearing are not controlling on the instant case.[42]

Turning to the facts relevant to his retaliation claim, Mr. Goodwin lodged a few internal

---

[38]Pl.'s Ex., [Doc. 40-1], pg. 2-3. The Administrative Law Judge stated, in her Decision and Order: "[a]lthough the comment made by the claimant is offensive, claimant contends that it was not his intent to be hurtful or offensive. The employer did not present any witnesses with firsthand knowledge of the circumstances surrounding claimant's comment and the effect the comment had on Ms. Ardoin. Ms. Ardoin testified that the comment did not offend her and Ms. Ardoin's sworn testimony outweighs any written statements submitted by the employer. Claimant is entitled to benefits."

[39]*See generally* [Doc. 40].

[40]Def.'s Mot. For Summ. J., [Doc. 38], pg. 9-10; Def.'s Reply Mem. in Supp. of Def.'s Mot. For Summ. J., [Doc. 50], pg. 2.

[41][Doc. 38], pg. 15; [Doc. 50], pg. 6.

[42][Doc. 50], pg. 9; Mem. in Opp. To Mot. For Ext. Of Time [Doc. 45], pg. 2. Mr. Goodwin asked for additional time to file a Statement of Uncontested Facts for his Motion for Summary Judgment because he was waiting on the transcript of his unemployment benefits hearing. Stericycle opposed this motion, arguing that findings of fact made by an unemployment hearing officer were not binding on this subsequent Title VII proceeding, and thus the transcript was not necessary to his Statement of Uncontested Facts. This court agreed with Stericycle and issued an Order denying Mr. Goodwin's Motion [Doc. 49].

complaints while at Stericycle, but acknowledged that none of these complaints included claims that the issues he complained about were motivated by racial discrimination.[43] Instead, he focuses, in his Response, on small inaccuracies in the defendant's statement of uncontested facts about his internal complaints.[44] Stericycle counters that it is clear, based on the evidence, that none of his complaints were based on racial discrimination, and thus Mr. Goodwin cannot make out a retaliation claim.[45]

After he was terminated, Mr. Goodwin filed a Charge of Discrimination with the EEOC, alleging discrimination and retaliation, and the EEOC issued its Dismissal and Notice of Rights on June 22, 2011.[46] In the meantime, he filed his Complaint, alleging violations of Title VII and Section 1981.[47] The parties conducted written discovery, and Mr. Goodwin's deposition was taken.[48]

Now, Stericycle seeks summary judgment on all of Mr. Goodwin's claims.

---

[43]These internal complaints included: (1) reporting mismanagement after discovering that Mr. Smith had told a driver he would have to pay $250 for a damaged truck fender and $6,000 for a concrete slab, or the driver would be terminated; (2) Mr. Smith stealing time from the company; (3) Mr. Smith reducing Mr. Goodwin's work hours from six days a week to five; (4) Mr. Smith yelling at him for calling Smith's home phone after Mr. Goodwin hit a gate post with a Stericycle truck; (5) Mr. Smith's wife writing work-related notes for him. *Id.* at ¶¶ 43-45.

[44]For example, Mr. Goodwin references factual inaccuracies in Defendant's Statement of Uncontested Facts regarding an incident which led to Mr. Goodwin ultimately complaining about his supervisor, Mr. Smith. The incident arose because Mr. Goodwin was trying to contact Mr. Smith after he hit a gate post while in a Stericycle truck. Mr. Smith responded angrily when Mr. Goodwin tried to reach Mr. Smith on his personal phone to report the issue. Mr. Goodwin's one contention with the Defendant's characterization of the incident is that Stericycle wrote that he had hit a lift gate instead of a gate post. *Id.* at ¶ V.

[45][Doc. 38-1], pg. 17-18; [Doc. 50], pg. 5.

[46]*Id.* at ¶ 46.

[47]Pl.'s Compl., pg. 1.

[48]Def.'s Mem. in Supp. of Mot. For Summ. J., pg. 11.

## LEGAL STANDARDS

I. **SUMMARY JUDGMENT STANDARD**

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party…" *Id.*

II. **EFFECT OF NON-MOVANT'S DEFICIENT SUMMARY JUDGMENT RESPONSE**

The Western District of Louisiana's Local Rule 56.2 requires a party's opposition to a motion for summary judgment to include a "separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried." LR56.2  Additionally, "[a]ll material

9

facts set forth in the statement required to be served by the moving party will be admitted, for purposes of the motion, unless controverted as required by this rule." *Id.* As Mr. Goodwin has failed to timely submit a statement of uncontested material facts, the undersigned must accept Stericycle's statement of uncontested facts [Doc. 38-2] as admitted.

## ANALYSIS

### I. Racial Discrimination under Title VII and Section 1981

Title VII makes it "an unlawful employment practice for an employer. . . to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ." 42 U.S.C. § 2000e-2(a)(1). The standard of proof for Title VII discrimination claims also applies to Section 1981 claims, and thus the undersigned will use the framework from Title VII to analyze Mr. Goodwin's Section 1981 claims as well. *Shackleford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n. 2 (5th Cir. 1999).

To withstand summary judgment, Mr. Goodwin must present, using direct or circumstantial evidence, "sufficient evidence for a reasonable jury to conclude that 'race. . .was a motivating factor for any employment practice.'" *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003) (citing 42 U.S.C. § 2000e-2(m)). First, the undersigned agrees with Stericycle that Mr. Goodwin has not presented any direct evidence to show racial discrimination: reviewing his deposition, he is asked whether he was told or heard from anyone at Stericycle that employment decisions made in relation to him were race-related. Mr. Goodwin answered in the negative.[49] Thus, Mr. Goodwin's claims for discrimination must rest on circumstantial evidence instead.

---

[49] Pl.'s Dep., pg. 263:9-264:18.

Turning to the circumstantial evidence, a court must go through a specific analysis for summary judgment of Title VII claims based on circumstantial evidence, using the *McDonnell Douglas* burden-shifting framework to analyze a plaintiff's claims. *See Grimes v. Tex. Dep't of Mental Health and Retardation*, 102 F.3d 137, 140 (5th Cir. 1996) (applying the *McDonnell Douglas* framework to Title VII discrimination claims); *see also Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (applying *McDonnell Douglas* framework to Title VII retaliation claims). The *McDonnell Douglas* framework is a three step process. *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In step one, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Id.* In step two, if the plaintiff makes out his *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant articulates a legitimate reason, then a court proceeds to step three, where the burden shifts back to the plaintiff to show that the defendant's proffered reason was either merely pretextual ("pretext alternative"), or else the reason provided is true, but is only one of the reasons for the employer's conduct, and another reason is based on the employee's protected characteristic (the "mixed motive alternative"). *Id.* at 802-04; *see also McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

The Fifth Circuit has held that in "work-rule violation cases," such as this case, "a Title VII plaintiff may establish a *prima facie* case by showing either [1] that he did not violate the rule or [2] that, if he did, white employees who engaged in similar acts were not punished similarly." *Turner v. Kansas City Southern Ry. Co.*, 675 F.3d 887, 892-93 (5th Cir. 2012) (citations omitted). In the instant case, Mr. Goodwin cannot show either. Stericycle had a Code

of Conduct, which Mr. Goodwin received at his orientation.[50] He was aware of Stericycle's anti-harassment policy and Personal Conduct Policy.[51] He acknowledged in his deposition, on several occasions, that calling Ms. Ardoin "Curly, the fat one," or trying to hug or kiss Ms. Ardoin, could be grounds for termination based on Stericycle's policies.[52] The undersigned takes note that Ms. Ardoin did not take permanent offense to Mr. Goodwin's insult, and in fact was forgiving enough to come to his defense at a later unemployment benefits hearing.[53] This does not, however, negate the fact that Ms. Ardoin did initially take offense, and that, even according to Mr. Goodwin, calling a customer "Curly, the fat one" would be a violation of Stericycle's Code of Conduct. Viewing the evidence in the light most favorable to Mr. Goodwin, the undersigned can find no evidence which indicates that Mr. Goodwin did not violate Stericycle's work rules in its Code of Conduct, which require employees to treat their customers, like Ms. Ardoin, with respect.

Similarly, Mr. Goodwin cannot prove that other similarly-situated non African American employees were treated differently. To prove disparate treatment, the Fifth Circuit requires a plaintiff to "show that. . . employees [who were not members of the plaintiff's protected class] were treated differently under circumstances 'nearly identical to his.'" *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (citations omitted). Here, Mr. Goodwin has not offered evidence of any non-African American Stericycle route managers who said anything to a customer comparable to Mr. Goodwin's "Curly" comment and were not punished for it, and the

---

[50][Doc. 38-2], at ¶ 14.

[51]*Id.* at ¶¶ 15-16.

[52]Pl.'s Dep., pg. 40:2-21, 42:3-6; 71:23-72:7.

[53][Doc. 40], at ¶¶VII-IX.

undersigned cannot find evidence in the record of disparate treatment either. While this court does not require completely identical evidence for "similarly situated" employees, they must at least be *nearly* identical. *Id.* The record does not contain this evidence, and thus his *prima facie* case fails.

Assuming that Mr. Goodwin could make out a *prima facie* case, he would still fail on step three of *McDonnell Douglas*, as he cannot show that Stericycle firing him was either pretextual or that race was a motivating factor in their decision. *McDonnell Douglas*, 411 U.S. at 802-04. Stericycle meets step two of *McDonnell-Douglas*'s burden-shifting framework by proffering a non-discriminatory reason for terminating him: he insulted a customer. *Id.* at 802.

To prove pretext or mixed motive, Mr. Goodwin seems to rest his argument on the fact that he did not mean to offend Ms. Ardoin with his "Curly" comment, and that Ms. Ardoin did not stay offended, later speaking on his behalf at an unemployment benefits hearing.[54] Because the Administrative Law Judge in his unemployment hearing did not find that Mr. Goodwin had committed misconduct, Mr. Goodwin presumably reasons, the undersigned should make an inference that it must have been racial discrimination which led to his termination, thus making the reasons offered by Stericycle either partially or wholly dishonest. As noted in a previous order in this case, however, findings from an unemployment hearing are not necessary and binding on a subsequent different action between the employee and the employer.[55] Additionally, construing the evidence in the light most favorable to the plaintiff, even if it is assumed that he was wrongfully terminated, there is no evidence that the actual motivation behind his termination

---

[54][Doc. 40], ¶¶VII-IX.

[55]Order Denying Mot. to Extend Time [Doc. 49], pg. 2, citing La. Rev. Stat. Ann. § 23:1636; *Thoams v. Louisiana Dep't of Soc. Servs.*, 406 Fed App'x 890, 995 (5th Cir. 2010).

was either partially or wholly race-related. Perhaps his termination was the result of an overreaction on the part of his supervisors, but in order to sustain his Title VII and Section 1981 claims, Mr. Goodwin must present evidence that his termination stemmed, at least in part, from racial motivation. As he has not presented evidence indicating that Stericycle's decision, either in whole or in part, was motivated by racial discrimination, his claims must fail.

## II. Retaliation

For similar reasons, Mr. Goodwin's retaliation claim also fails. Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees. . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter. . . ." 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation, Mr. Goodwin must show three elements: "(1) that [he] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Roberson v. Alltel Information* Servs., 373 F.3d 647 (5th Cir. 2004); *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir.1996). If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to show that a legitimate, nondiscriminatory reason motivated the employment action. *Gee*, 289 F.3d at 345. If the employer meets this burden, the plaintiff must prove that the employer's proffered reason is a pretext for retaliation. *McCoy*, 492 F.3d at 557.

Stericycle acknowledges that Mr. Goodwin can prove step two of his *prima facie* retaliation claim: his termination constituted an adverse employment action.[56] It asserts, and the undersigned agrees, that the evidence, construed in the light most favorable to Mr. Goodwin,

---

[56][Doc. 38-1], pg. 17.

cannot sustain steps one and three of Mr. Goodwin's *prima facie* retaliation claim.[57] Turning to step one, activity protected by Title VII, Mr. Goodwin did indeed lodge some internal complaints with Stericycle's HR department.[58] He acknowledges, however, that none of his complaints included claims that the problems he reported were racially motivated, and thus they do not fall within the ambit of Title VII.[59]

Turning to step three, Mr. Goodwin also has not met his burden in showing that there was a causal link between his internal complaints to Human Resources and his termination. Even if the undersigned were to consider his internal complaints to HR protected activity under Title VII, they occurred roughly two years before his termination, a distance in time long enough to indicate that his termination had no connection to the internal complaints.[60] Mr. Goodwin must produce evidence that "retaliation, in whole or in part, motivated the adverse employment action." *See Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir. 2001). The undersigned can find no evidence linking his complaints to his termination, and in fact Mr. Goodwin admits in his deposition that he did not think he was terminated because of retaliation.[61] Instead, it seems clear from the record that his termination stemmed solely from the comment that he made to Ms. Ardoin.

For the reasons discussed, *supra*, the undersigned also finds that even if Mr. Goodwin could establish his *prima facie* case on retaliation, he would not be able to prove step three of his

---

[57] *Id.* at 17-19.

[58] [Doc. 38-2], at ¶¶43-45.

[59] *Id.*

[60] *Id.* at ¶¶43-45.

[61] Pl.'s Dep.263:9-264:18.

retaliation claim, namely, that Stericycle's proffered reasons for firing him were pretextual.

## CONCLUSION

For the reasons stated herein, Stericycle's Motion for Summary Judgment will be granted, and Mr. Goodwin's claims against Stericycle will be dismissed.

Lake Charles, Louisiana, this __12__ day of __Sept_____ 2012.

                                                    PATRICIA MINALDI
                                                  UNITED STATES DISTRICT
                                                  JUDGE